Andrew Martin & Associates P.L.L.C.
1685 S. Colorado Blvd #S,442
Denver, Colorado, 80222
Phone: 720-432-1205

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BOB LEWIS, )<br><br>　　　　　Plaintiff, )<br><br>　　vs. )<br><br>Google, INC, A Delaware Corporation )<br>YouTube LLC, A Delaware Limited )<br>Liability Company )<br><br>　　　　　Defendant(s) )<br><br>_____ ) | Case No.: _____<br><br>**COMPLAINT FOR<br>DAMAGES, RELIEF,<br>DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>Trial Date: None Set |

The Plaintiff, Bob Lewis (PLAINTIFF LEWIS) brings this complaint for actual, compensatory and punitive damages, declaratory judgment, and other equitable relief against Defendants YouTube LLC (YOUTUBE) and its parent company Google, Inc (GOOGLE), in their individual capacity, as joint enterprise state actors and/or agents of China, The EU, and multiple other foreign governments, collectively referred to as GOOGLE unless otherwise specified.

# I. INTRODUCTION

1.　　The Plaintiff, Bob Lewis, brings this lawsuit to stop GOOGLE to stop unlawfully discriminating against him by virtue of censoring and demonetizing his videos because of

GOOGLE's opposition to PLAINTIFF LEWIS' Christian religious affiliation, national origin as a patriotic American citizen who supports American tradition and culture, and for lawfully exercising his Constitutionally protected First Amendment rights. GOOGLE has a well-established history of discriminatorily censoring those that promote Christian beliefs, patriotic American culture and laws, and constitutionally protected First Amendment free speech rights. GOOGLE does this specifically by arbitrarily and maliciously demonetizing LEWIS' videos, algorithmic limiting the discovery of LEWIS' channel and videos on their platform, and deleting LEWIS' YouTube channel, Misandry Today.

2.      Private company Defendants GOOGLE function as *de facto* and/or *de jure* agents and as joint enterprise state actors on behalf of the nations of The Peoples Republic of China, the EU, and the signatory governments of the Christchurch Call agreement. As *de facto* and/or *de jure* agents and as joint enterprise state actors, GOOGLE enforces Chinese, EU, and Christchurch Call signatory government laws within the United States, against law abiding United States citizens, in violation of the United States Constitution. Specifically, these foreign countries criminalize hate speech, while United States laws and federal courts recognize no hate-speech exception under the United States Constitution's First Amendment protections that American citizens enjoy.

3.      This action, while filed on behalf of LEWIS, personally and as an individual, is a case of extreme national importance to the American people. On information and belief, GOOGLE knowingly and actively foments insurrection against the United States government by: (1) funding non-profit organizations like the Southern Poverty Law Center, which directly provides

material aid and funding domestic terrorists such as Antifa; (2) creating and maintaining company sponsored employee "Resist" protest groups which protest, sometimes violently, against the American Federal government and American citizens who promote and/or speak out in support of the American tradition, and the American way of life; (3) by directly and indirectly, funding Anti-American and sometimes illegal causes, such as open borders, and aiding and abetting the federal crime of illegal immigration.

4.      On information and belief, GOOGLE CEO Sundar Pichai, (Pichai), in an apparent effort to conceal the true extent of GOOGLE'S foreign collaboration and foreign interference with American citizen's constitutionally protected free speech rights, misrepresented material facts while under oath when he testified to the United States Congress in 2018. Under U.S. federal law, willfully misrepresenting material facts under oath to Congress is a crime pursuant to 18 U.S. Code § 1621 and/or 18 U.S. Code § 1001.  Pichai did this when he denied, under oath, that GOOGLE/YOUTUBE maintained blacklists and manually manipulated content on their websites and/or platforms.

5.      On information and belief, on behalf of the aforementioned foreign governments, GOOGLE uses its global market dominance and massive monopoly power to unlawfully and/or unethically coerce other big tech companies and others to collaborate with GOOGLE to knowingly, unethically, unlawfully, and maliciously silence, censor, and demonetize and/or deplatform American citizens who speak in support of Christian beliefs, American values, laws, and traditions. Further, GOOGLE coerces other big tech companies to become *de facto* and/or *de jure* agents and joint enterprise collaborators with foreign governments to enforce foreign law on

United States citizens, on American soil, including the PLAINTIFF LEWIS. GOOGLE's actions may very well violate the Sherman Act, the Lanham act, in addition to aiding and abetting violations of federal criminal law, as well as constitute insurrection against the United States government and American people.

6.      GOOGLE's bad faith censorship, silencing American's free speech, national origin discrimination, and religious discrimination, in addition to other damages caused to PLAINTIFF LEWIS, constitute a direct domestic threat to the Constitution of the United States; represent a clear and present danger to the integrity of the United States electoral system and the American way of life as well as represent a clear and present danger to law abiding American patriots and citizens.

## II.   JURISDICTION AND VENUE

7.      PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 6.

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S. Code § 1331 over the PLAINTIFF's Free Speech Discrimination, Religious Discrimination, and National Origin Discrimination claims pursuant to 42 U.S. Code § 1983 and 42 U.S. Code § 2000a, as well as other applicable federal civil rights law.

9.      This Court also has original subject matter jurisdiction pursuant to 28 U.S. Code § 1331 over the PLAINTIFF's constitutional challenge claims regarding 47 U.S. Code § 230.

10.     This Court has personal jurisdiction over GOOGLE because the defendant maintains a significant presence in Colorado state by virtue of maintaining a $130 million dollar, 200,000+

square foot office complex that employs in excess of 800 workers located in the city of Boulder Colorado.

11.     This Court has personal jurisdiction over the PLAINTIFF LEWIS as he resides in Colorado.

12.     Additionally, this Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332, as PLAINTIFF LEWIS has no connection to GOOGLE's headquarters located in the State of California and the Plaintiff's damages to exceed $75,000.

13.     Additionally, this Court has original jurisdiction because, as described herein, GOOGLE's Terms of Service constitutes an adhesion contract and is unconscionable and unenforceable as a matter of law.

14.     Venue is proper in this District under 28 U.S.C. §§ 1391 for the reasons set forth in statements 10, 11, and/or 13.

## III.  THE PARTIES

15.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 14.

16.     PLAINTIFF LEWIS, is a societal, cultural, and political commentator who owns and operates the website located at internet DNS address: MisandryToday.com, operates the YouTube Channel Misandry Today, and is the author of The Feminist Lie, It Was Never About Equality.

17.     DEFENDANT GOOGLE Inc. is a for profit, public corporation incorporated under the laws of the State of Delaware, with its principal place of business in Mountain View, California and regularly conducts business throughout the state of Colorado and globally. On information

and belief, at all relevant times, Defendant GOOGLE acts as an agent of Defendant YOUTUBE and controls and/or participates in controlling/directing discriminatory practices as related to restricting constitutionally protected speech, religious discrimination, and national origin discrimination, as well as other causes of action alleged in this complaint regarding the YouTube.com website and/or platform.

18.     DEFENDANT YOUTUBE, LLC is a for profit limited liability corporation, wholly owned by GOOGLE, and organized under the laws of the State of Delaware. YOUTUBE's principal place of business is Mountain View, California and it regularly conducts business throughout Colorado. Defendant YOUTUBE operates the largest and most popular internet video viewer site, platform, and service in the world and holds itself out as one of the most important and largest public forums for the expression of ideas and exchange of speech available to the public. On information and belief, at all relevant times Defendant YOUTUBE acts as an agent of GOOGLE. and uses, relies on, and participates with GOOGLE in restricting speech on the YOUTUBE website, platform, or service.

## IV. FACTS RELEVANT TO ALL CLAIMS

19.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 18.

### 4.1: GOOGLE is a Chinese State Actor

20.     In September 2015, Chinese President Xi Jinping arrived in Seattle and met with tech leaders. GOOGLE executives were invited to this private meeting between tech leaders and the Chinese President.

21. In June 2017, The People's Republic of China passed a National Intelligence Law. On information and belief, a true and correct translated copy was obtained and downloaded by Brown University on or about March 2019 and, at the time this pleading was prepared, is located online at the following website:

http://cs.brown.edu/courses/csci1800/sources/2017_PRC_NationalIntelligenceLaw.pdf

(Incorporated and attached herein as *Exhibit A*)

22. The People's Republic Of China National Intelligence Law in June 2017, Article 7 states in pertinent part:

> Any organization or citizen shall support, assist and cooperate with the state intelligence work in accordance with the law. (Article 7, *Exhibit A*)

23. Article 12 of China's 2017 National Intelligence Law states:

> State intelligence work organization may, in accordance with relevant state regulations, establish cooperative relations with relevant individuals and organizations and entrust relevant work          (Article 12, *Exhibit A*)

24. Article 16 of China's 2017 National Intelligence Law states, in pertinent part:

> When the staff of the state intelligence work organization performs tasks according to law, in accordance with the relevant provisions of the State, after obtaining the corresponding documents, they may enter the relevant areas and places that restrict access and may understand and ask relevant information to relevant organs, organizations and individuals.
> (Article 16, *Exhibit A*)

25. Article 17 of China's National Intelligence Law states, in pertinent part:

> According to the needs of the work, according to the relevant national regulations, the staff of the national intelligence work agency may preferentially use or legally requisition the… communication tools, sites and buildings of relevant organs, organizations and individuals, and if necessary, may set relevant workplaces and equipment…

1

(Article 17, **Exhibit A**)

2    26.     Article 28 of China's National Intelligence Law states, in pertinent part:

3            Whoever violates the provisions of this law and obstructs the state
             intelligence work organization and its staff from carrying out intelligence
4            work according to the law shall be recommended by the state intelligence
             work agency to be dismissed by the relevant units or be warned by the state
5            security organs or public security organs...Detained, if it constitutes a
             crime, criminal responsibility shall be investigated according to law.
6                                                                  (Article 28, **Exhibit A**)

7    27.     In January 2018, news website *Engadget* reported GOOGLE maintains at least four

8    offices in China located in Hong Kong, Shenzhen, Beijing, and Shanghai staffed with hundreds

9    of employees. On information and belief, GOOGLE operates in China, as an organization, thus is

10   required by the 2017 National Intelligence Law to function as a joint enterprise collaborator and

11   agent of the Chinese government. (See: https://www.engadget.com/2018/01/17/google-shenzhen-

12   office/, attached and incorporated herein by reference as **Exhibit B**)

13   28.     In August 2018, the *Intercept* published an article outlining GOOGLE's secret joint

14   enterprise agreement with the Chinese government to develop a search engine designed to be

15   compatible with China's state sponsored censorship and intelligence activities. This search

16   engine project was called Project Dragonfly. Project Dragonfly, during development, had

17   hundreds of GOOGLE employees assigned to work on it.

18   (See: https://theintercept.com/2018/08/01/google-china-search-engine-censorship/, attached and

19   incorporated herein by reference as **Exhibit C**)

20   29.     The *Intercept* reported GOOGLE CEO Sundar Pichai met with a top Chinese government

21   official as part of an effort to re-enter China in December 2017. (**Exhibit C**)

*YOUTUBE/GOOGLE COMPLAINT FOR*                              PG. 8 OF 67
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

30.     According to the Intercept, GOOGLE's Project Dragonfly will filter websites blocked by the Chinese government's great firewall. This includes but is not limited to information about political opponents, free speech, news organizations, and academic studies. Project Dragonfly's censorship will apply across the platform. (***Exhibit C***)

31.     On information and belief, despite public outcry from the American people and GOOGLE's own employees, GOOGLE continued development of Project Dragonfly on behalf of the Chinese government until, at least, July 2019.

32.     On information and belief, GOOGLE willingly collaborates and operates as a joint-enterprise state actor with the Chinese government's national intelligence service and works to keep this relationship a secret. The only reason these facts are publicly known to the Intercept is because this information was leaked by a GOOGLE employee.

33.     PLAINTIFF LEWIS has been very public and vocal regarding his support of Constitutional First Amendment Free Speech Rights, Second Amendment right to bear arms, The sanctity of the U.S. electoral System, his support of American tradition and culture, as well as his firm opposition to communist and socialist enemies of the United States concept of capitalism.

34.     On information and belief, GOOGLE Subsidiary YOUTUBE uses censorship techniques associated with Project Dragonfly against PLAINTIFF LEWIS to discriminate against him based on his national origin as a patriotic American, silence his constitutionally protected Freedom of Speech regarding as values as an American citizen and his religion as a Christian.

35.     In 2018, The Electronic Frontier Foundation criticized GOOGLE for its lack of transparency related to its willingness to work for the People's Republic of China regarding

creation Project Dragonfly on behalf of the Chinese government. (See Electronic Frontier Foundation Article: *Google Needs to Come Clean About Its Chinese Plans*, published August 15, 2018 and attached and incorporated herein as ***Exhibit D***)

### 4.2: GOOGLE Operates As EU State Actor

36.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 35.

37.    In or about 2012, DEFENDANT YOUTUBE created it's "Trusted Flagger" program. On an Official YouTube Blog Post from September 22, 2016 states in pertinent part:

> Back in 2012, we noticed that certain people were particularly active in reporting Community Guidelines violations with an extraordinarily high rate of accuracy. From this insight, the Trusted Flagger program was born to provide more robust tools for people or organizations who are particularly interested in and effective at notifying us of content that violates our Community Guidelines.
>
> As part of this program, Trusted Flaggers receive access to a tool that allows for reporting multiple videos at the same time.
>
> Our Trusted Flaggers' results around flagging content that violates our Community Guidelines speak for themselves: their reports are accurate over 90% of the time. This is three times more accurate than the average flagger.

(See: https://youtube.googleblog.com/2016/09/growing-our-trusted-flagger-program.html, attached and incorporated herein at ***Exhibit E***)

On information and belief, YOUTUBE Trusted Flaggers get videos pulled offline three times more often than an average flagger. In other words, 90% of the time when a Trusted Flagger flags a video for removal, that video is taken offline.

38.     Online News Outlet The Verge reported on March 17, 2014, that the British Government and other government agencies are YOUTUBE Trusted Flaggers. They state, in pertinent part:

> A report from The Financial Times last week revealed that **British authorities are among these super flaggers**, and they're constantly scouring the video site for extremist propaganda.

> Roughly 200 people and organizations are included in the pool of trusted flaggers, the Journal says, and **less than 10 of those slots are filled by government agencies**.

> And that power shouldn't be underestimated: more often than not, flags from participants spell doom for videos that receive them.

(See: https://www.theverge.com/2014/3/17/5519542/youtube-super-flaggers-elite-group-hunts-and-kills-content, attached and incorporated herein as *Exhibit F*)

39.     On or about May 31, 2016 The Guardian Reported in Pertinent Part:

> An online "code of conduct" aimed at fighting hate speech has been launched by the European Union in conjunction with four of the world's biggest internet companies.

> Facebook, Twitter, YOUTUBE and Microsoft have all been involved in the creation of the code…

> ...It establishes "public commitments" for the companies, including the requirement to review the "majority of valid notifications for removal of illegal hate speech" in less than 24 hours, and to make it easier for law enforcement to notify the firms directly.

> GOOGLE's public policy and government relations director, Lie Junius, said "We're committed to giving people access to information through our services, but we have always prohibited illegal hate speech on our platforms… We are pleased to work with the Commission to develop co- and self-regulatory approaches to fighting hate speech online."

(See: https://www.theguardian.com/technology/2016/may/31/facebook-youtube-twitter-

microset-eu-hate-speech-code, Attached and incorporated herein as ***Exhibit G***)

40.      The text of European Union's Code of Conduct agreement with Facebook, Microsoft,

Twitter, and YOUTUBE/GOOGLE can be downloaded here:

https://ec.europa.eu/newsroom/document.cfm?doc_id=40573, *(*Attached and incorporated herein

as ***Exhibit H***)

41.      GOOGLE is a joint enterprise and/or pervasively intertwined state actor by virtue of

signing the European Union Code of Conduct Agreement, which states in pertinent part:

> The IT Companies support the European Commission and EU Member States in the effort to respond to the challenge of ensuring that online platforms do not offer opportunities for illegal online hate speech to spread virally.

> "the Commission will intensify work with IT companies, notably in the EU Internet Forum, to counter terrorist propaganda and to develop by June 2016 a code of conduct against hate speech online"

> In order to prevent the spread of illegal hate speech, it is essential to ensure that relevant national laws transposing the **Council Framework Decision 2008/913/JHA** are fully enforced by Member States in the online as well as the in the offline environment.

> The IT Companies underline that the present code of conduct 3 is aimed at guiding their own activities as well as sharing best practices with other internet companies, platforms and social media operators.

> The IT Companies, taking the lead on countering the spread of illegal hate speech online, have agreed with the European Commission on a code of conduct setting the following public commitments:

> •      The IT Companies to have in place clear and effective processes to review notifications regarding illegal hate speech on their services so they can remove or disable access to such content. The IT companies to have in place Rules or Community Guidelines clarifying that they prohibit the promotion of incitement to violence and hateful conduct.

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

• Upon receipt of a valid removal notification, the IT Companies to review such requests against their rules and community guidelines and where necessary national laws transposing the Framework Decision 2008/913/JHA, with dedicated teams reviewing requests.

• The IT Companies to review the majority of valid notifications for removal of illegal hate speech in less than 24 hours and remove or disable access to such content, if necessary.

• In addition to the above, the IT Companies to educate and raise awareness with their users about the types of content not permitted under their rules and community guidelines. The notification system could be used as a tool to do this.

• The IT companies to provide information on the procedures for submitting notices, with a view to improving the speed and effectiveness of communication between the Member State authorities and the IT Companies, in particular on notifications and on disabling access to or removal of illegal hate speech online. The information is to be channelled through the national contact points designated by the IT companies and the Member States respectively. This would also enable Member States, and in particular their law enforcement agencies, to further familiarise themselves with the methods to recognise and notify the companies of illegal hate speech online.

• The IT Companies to encourage the provision of notices and flagging of content that promotes incitement to violence and hateful conduct at scale by experts, particularly via partnerships with CSOs (*civil society organizations*), by providing clear information on individual company Rules and Community Guidelines and rules on the reporting and notification processes. The IT Companies to endeavour to strengthen partnerships with CSOs by widening the geographical spread of such partnerships and, where appropriate, to provide support and training to enable CSO partners to fulfill the role of a **"trusted reporter"** or equivalent, with due respect to the need of maintaining their independence and credibility.

• The IT Companies rely on support from Member States and the European Commission to ensure access to a representative network of CSO partners and **"trusted reporters"** in all Member States to help provide

high quality notices. IT Companies to make information about "trusted reporters" available on their websites.

• The IT Companies to provide regular training to their staff on current societal developments and to exchange views on the potential for further improvement.

• The IT Companies to intensify **cooperation between themselves and other platforms and social media companies** to enhance best practice sharing.

• The IT Companies and the European Commission, recognising the value of independent counter speech against hateful rhetoric and prejudice, aim to continue their work in identifying and promoting independent counter-narratives, new ideas and initiatives and supporting educational programs that encourage critical thinking.

• The IT Companies to intensify their work with CSOs to deliver best practice training on countering hateful rhetoric and prejudice and increase the scale of their proactive outreach to CSOs to help them deliver effective counter speech campaigns. The European Commission, in cooperation with Member States, to contribute to this endeavour by taking steps to map CSOs' specific needs and demands in this respect.

• The European Commission in coordination with Member States to promote the adherence to the commitments set out in this code of conduct also to other relevant platforms and social media companies.

(See: *Exhibit H*)

42.     In December 2016 The EU Commissioner for Justice, Consumers and Gender Equality, Věra Jourová, released a report from the EU Commission entitled Code of Conduct On Countering Illegal Hate Speech Online: First Results of Implementation. (EU Justice Commission Hate Speech 2016 Report)

 (See: http://ec.europa.eu/information_society/newsroom/image/document/2016-50/factsheet-code-conduct-8_40573.pdf attached and incorporated herein as *Exhibit I*)

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

43.     The position of EU Commissioner for Justice, Consumers and Gender Equality is the person who is responsible for overseeing the Commission department responsible for EU policy on justice, consumer rights and gender equality.

44.     Framework Decision 2008/913/JHA Council Framework Decision 2008/913/JHA of the Acts Adopted Under Title VI of the **EU Treaty** of November 28, 2008 on combating certain forms and expressions of racism and xenophobia by means of criminal law.

(See: https://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2008:328:0055:0058:en:PDF, attached and incorporated herein as ***Exhibit J***)

45.     On information and belief, GOOGLE is abiding by and expanding to U. S. markets, the online enforcement of "hate speech" laws promulgated by the European Union. Framework Decision 2008/913/JHA requires EU Member States to enact criminal penalties for racism and other forms of hate speech. (Pg 3, Article 3: Criminal Penalties, ***Exhibit J***)

46.     The EU Justice Commission Hate Speech 2016 Report notes that the grounds for reporting hate speech were the following: race, color, national origin, ethnic origin, decent, religion, anti-Muslim hatred, antisemitism, sexual orientation or gender-related hatred.  (Pg. 3 of EU Justice Commission Hate Speech 2016 Report, ***Exhibit I***)

47.     The EU Justice Commission Hate Speech 2016 Report also notes that of the 600 notifications that were made, 270 were made by EU sanctioned **"Trusted Flaggers"** (Pg. 4,  EU Justice Commission Hate Speech 2016 Report, ***Exhibit I***)

48.     The ERDi, (European Digital Rights) an association of civil and human rights organizations across Europe, in opposition to the Defendants' Code of Conduct agreement with

the European Union, stated, in pertinent part:

> Firstly, the code recognises that the companies are "taking the lead on countering the spread of illegal hate speech online." It seems peculiar that either the European Commission or the EU Member States should not to take the lead.

> In a society based on the rule of law, private companies should not take the lead in law enforcement, theirs should always have only a supporting role – otherwise this leads to arbitrary censorship of our communications.

> This creates a problem because internal rules are mixed together with legal obligations, with no clear distinction between them – it then becomes unclear what is against the law and what is not, what is legitimate speech and what is not.

> In the code of conduct, there is not a single mention about the essential role of judges in our democratic societies. There is no mention about the enforcement of the law by public authorities. At each crucial point where law should be mentioned, it is not.

> The European Union is founded on crucial human rights principles, including that restrictions should be provided for by law. Giving private companies the "lead" role in dealing with a serious societal problem and replacing the law with arbitrary implementation of terms of service is not a durable answer to illegal hate speech. Ignoring the risk of counterproductive impacts is reckless. At the same time as not solving the problems that this code was created to address, it undermines fundamental freedoms.

(See: https://edri.org/guide-code-conduct-hate-speech/, attached and incorporated herein as

***Exhibit J***)

49.     *Article 19*, a multi-national organization that monitors the freedom of expression, also weighed in on the EU Justice Commissions Code of Conduct Agreement. In their June 2016 report, "EU: European Commission's Code of Conduct for Countering Illegal Hate Speech Online and the Framework Decision," they conclude in pertinent part:

ARTICLE 19 is deeply concerned that, despite its non-binding character, the Code will lead to more censorship by private companies – and therefore a chilling effect on freedom of expression on the platforms they run. This is especially so in the absense of any independent or meaningful commitment to protect freedom of expression.

The Code of Conduct is likely to be trumpeted by governments and companies alike as a milestone in the fight against "illegal hate speech." ARTICLE 19 believes however that it is misguided policy on the part of governments, one that undermines the rule of law. For companies, it is likely to amount to no more than a public relations exercise. In the meantime, freedom of expression online is likely to be greatly diminished.

(See: https://www.article19.org/data/files/medialibrary/38430/EU-Code-of-conduct-analysis-FINAL.pdf attached and incorporated herein as *Exhibit K*)

50.     The European Code of Conduct joint enterprise agreement signed by the EU government and GOOGLE remains in force at the time of this filing.

### 4.3: GOOGLE Operates As A Multi-National State Actor

51.     Plaintiff Lewis alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 50.

52.     On May 15, 2019, The Guardian reported that multiple governments and big tech companies entered into an agreement called the Christchurch call. They report in pertinent part:

World leaders and heads of global technology companies have pledged at a Paris summit to tackle terrorist and extremist violence online in what they described as an "unprecedented agreement".

Known as the Christchurch Call, it was organised by New Zealand's prime minister, Jacinda Ardern, and the French president, Emmanuel Macron, in response to the attack on the Christchurch mosque on 15 March in which 51 people were killed.

Macron and Ardern met ministers from G7 nations and leaders of internet

1

2

companies including <u>GOOGLE</u>, Facebook, Microsoft and Twitter. Facebook's CEO, Mark Zuckerberg, did not attend.

3

4

The initiative calls on signatory nations to <u>bring in laws that ban offensive material and to set guidelines on how the traditional media report acts of terrorism</u>. However, as a voluntary initiative it is for individual countries and companies to decide how to honour their pledge.

5

6

7

Britain, Canada, Australia, Jordan, Senegal, Indonesia, Norway and Ireland signed the pledge, along with the European commission, Amazon, Facebook, <u>GOOGLE</u>, Microsoft, Twitter, <u>YOUTUBE</u>, Daily Motion and Quant.

8

(See: <u>https://www.theguardian.com/world/2019/may/15/jacinda-ardern-emmanuel-macron-</u>

9

<u>christchurch-call-summit-extremist-violence-online</u>, attached and incorporated herein as ***Exhibit***

10

***L***)

11

53.    Then the Guardian goes on to state:

12

13

<u>The US has reportedly refused to sign up because of concerns about freedom of speech.</u>

(***Exhibit L***)

14

54.    On May 16, 2019, The New Zealand Herald reiterated that the United States refused to

15

enter into this agreement because of concerns over the Constitutional protections on Free Speech.

16

They report:

17

18

The White House will not sign an international agreement to combat online extremism brokered between French and New Zealand officials and top social media companies, amid US concerns that <u>it clashes with constitutional protections for free speech</u>.

19

(See: <u>https://www.nzherald.co.nz/nz/news/article.cfm?c_id=1&objectid=12231363</u>, attached and

20

incorporated herein as ***Exhibit M***)

21

55.     On information and belief, as part of their agreement under the Christchurch Call, online service providers, including GOOGLE committed to sharing information with other online service providers and foreign governments, including the expansion and use of shared databases, URLs (websites) and notifying each other when they take down online content they disagree with. This also includes working within a multi-company and multi-government stake holder process and for companies to work together in a coordinated fashion.

(Pg. 2 ChristChurch Call Agreement, See: https://www.christchurchcall.com/christchurch-call.pdf, attached and incorporated herein as *Exhibit N*)

56.     Additionally, on information and belief, online service providers, including GOOGLE, agreed to work with the signatory governments to shut down accounts. (Pg. 2, *Exhibit N*)

57.     On information and belief, online service providers, including GOOGLE, also agreed to use their algorithms to promote alternatives to promote counter-narratives that oppose any content the Christchurch call signatory governments and tech companies disagree with. There is nothing in this agreement that requires signatory online service providers, including GOOGLE, to ensure that any counter narrative promulgated be based in fact. (Pg. 2, *Exhibit N*)

58.     On information and belief, the Christchurch call signatory online service providers, including GOOGLE, also commit to the signatory governments to redirect online users from what they frame as extremist content as well as develop technical solutions to remove extremist content quickly and to work together with the other signatory companies and governments to share these censorship technologies with each other. (Pg. 2, *Exhibit N*)

59.     On information and belief, the Christchurch call also calls for online service providers,

including GOOGLE, to prevent online content they define as extremist from impacting offline activity as well. (Pg. 2, *Exhibit N*)

60.     On information and belief, the Christchurch call signatory governments and online service providers, including GOOGLE, agree to work with and cooperate with signatory governments law enforcement agencies to investigate and prosecute illegal online activity. On information and belief, for the countries that criminalize hate speech, this includes online hate speech as well. (Pgs 2-3, *Exhibit N*)

61.     Not only do the Christchurch call agreement signatory online service providers agree to work with signatory countries law enforcement, they also agree to to work with partner countries to develop best practices to remove content they disagree with, through direct operational coordination and trusted information exchanges. In other words, on information and belief, the signatory online service providers, including Defendants YouTube/Google agree to share internal information with other signatory tech companies and signatory governments. (Pg. 3, *Exhibit N*)

62.     The Christchurch also has a website located at: www.christchurchcall.com where in their supporters section they list the following tech companies as signatory supporters: Amazon.com; dailymotion; Facebook; GOOGLE; Microsoft; Qwant; Twitter; YOUTUBE. (Attached and incorporated herein as *Exhibit O*)

### 4.4: GOOGLE Enforces Foreign Hate Speech Laws & Opposes

### Free Speech In the United States

63.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 62.

64.     DEFENDANTS GOOGLE and YOUTUBE operate largest publicly accessible commercial video website for the general public to purchase, rent, and otherwise view videos, movies, and TV shows in the United States and the world. YOUTUBE's website also provides the largest publicly accessible commercial online public forum for paid customers and non-paying users alike to express and exchange speech online. YOUTUBE's website is the largest online public forum in the history of the world for TV show rentals, movie rentals, TV show purchases, movie purchases, and video based speech expression available to the general public in the history of the world. The total number of monthly active users on YOUTUBE, as of May 2019 is 2 billion, which represents almost half of the 4.4 billion internet users in the world. This means that 45% of the world's population online uses YOUTUBE. YOUTUBE is locally available in 91 countries, and accessible in 80 different languages. 73% of United States adults use YOUTUBE. Alexa website ranking service ranks YOUTUBE's website as number 2 in the world. YOUTUBE is also the second largest social media platform in the world behind Facebook by user count. Globally, YOUTUBE users watch 1 billion hours of content everyday. 500 hours of video content is uploaded to YOUTUBE every minute.

65.     YOUTUBE markets itself as website that promotes free speech and freedom of expression free from censorship. YOUTUBE's about page specifically states:

> Our Mission is to give everyone a voice and show them the world. We believe that everyone deserves to have a voice, and that the world is a better place when we listen, share and build community through our stories.
>
> Our values are based on four essential freedoms that define who we are.

Freedom of Expression:
We believe people should be able to speak freely, share opinions, foster open dialogue, and that creative freedom leads to new voices, formats, and possibilities.

Freedom of Information
We believe everyone should have easy, open access to information and that video is a powerful force for education, building understanding, and documenting world events, big and small.

Freedom of Opportunity:
We believe everyone should have a chance to be discovered, build a business and succeed on their own terms, and that people-not gatekeepers-decide what's popular.

Freedom to Belong:
We believe everyone should be able to find communities of support, break down barriers, transcend borders and come together around shared interests.

(See: https://www.youtube.com/yt/about/ Also attached and incorporated herein as ***Exhibit P***)

66.     On March 14, 2018, GOOGLE Insights published an internal research document called "The Good Censor" (Hereafter referred to as The Good Censor) that was leaked and published by Breitbart News (Attached and incorporated herein as ***Exhibit Q***).

67.     GOOGLE publicly confirmed this document's legitimacy to The Verge.

(https://www.theverge.com/2018/10/10/17961806/google-leaked-research-good-censor-censorship-freedom-of-speech-research-china, attached and incorporated at ***Exhibit R***)

68.     GOOGLE admits that GOOGLE is one of the three Big Tech companies that "control" the majority of online conversations around the world. Notice how GOOGLE didn't state they facilitate the majority of online conversations, they state they control them. This isn't a semantic difference, it's a factual one. (Pg 14, ***Exhibit Q***)

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

69.     GOOGLE admits social media was a major influence in the outcome of the 2016 election that put President Donald Trump in the White House. While GOOGLE blames Russian interference for this, thanks to the Mueller investigation, we now know that the Russian Interference narrative was not credible. (See Pg 19, ***Exhibit #Q***)

70.     GOOGLE Stipulates the "We're not responsible for what happens on our platforms Defense" is no longer credible or viable. (Pg. 22, ***Exhibit Q***)

71.     GOOGLE admits that one of the reasons users behave badly online is because "everyone has a voice" which, according to GOOGLE, means:

> The 'little guys and girls' can now be heard - emerging talent, revolutionaries, whistleblowers and campaigners. But 'everyone else' can shout loudly too - including terrorists, racists, misogynists and oppressors. And because "everything looks like the New York Times" on the net, it's harder to separate fact from fiction, legitimacy from illegitimacy, novelty from history, and positivity from destructivity. When consumers/producers feel like they 'own' their media platforms, their experiences of free speech and censorship feel more personal too. They increasingly value their ability to speak freely, but also feel personally assaulted when confronted through their own channels, lashing out more violently when their voice and opinions are threatened.
>
> (Pg. 32, ***Exhibit Q***)

72.     GOOGLE admits that China's government is the most opposed to Free Speech on the internet and political interference is increasing. (Pgs. 35-39, ***Exhibit Q***)

73.     GOOGLE admits that governments are attempting to control political discourse online by asking GOOGLE to censor more and more content. GOOGLE even admits that 56% of these government censorship requests relate to YOUTUBE. GOOGLE does not disclose which governments are making these censorship requests. (Pg. 43, ***Exhibit Q***)

74.     GOOGLE even admits that tech firms have mismanaged this situation, they state:

> In a global world, the platforms' status as bastions of free speech is hugely undermined by their willingness to bend to requirements of foreign repressive governments. When platforms compromise their public-facing values in order to maintain a global footprint, it can make them look bad elsewhere.
>
> (Pg 47, *Exhibit Q*)

75.     GOOGLE states that governments of other countries are attempting to assert power over global policy. They state:

> As the tech companies have grown more dominant on the global stage, their intrinsically American values have come into conflict with some of the values and norms of other countries.
>
> Now, governments are seeking to balance their national values with those of the tech giants through increasingly strong measures. And because the internet is a global platform, many want those nationally-desired protections to be enacted globally – influencing how the entire internet functions.
>
> (Pg. 56, *Exhibit Q*)

76.     On information and belief, GOOGLE chose to abandon free speech. They state:

> Recognising the anxiety of users and governments, <u>tech companies are adapting their stance towards censorship</u>, and <u>changing their terms of service</u> to reflect the current mood. This could mean taking a more hardline approach to hateful content, as Twitter has done, or <u>preventing the monetization of questionable videos, as YouTube has done</u>.
>
> Whatsmore, companies are publicly declaring these new values, making them as intrinsic to the platforms' identities as their unwavering support of freedom of expression once was.
>
> (Pg.62, *Exhibit Q*)

77.     Additionally, GOOGLE admits it abandoned passive facilitation of online content to actively curating content. In other words, GOOGLE admits it now acts as a publisher.

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

1

2
> Following a series of public and media outcries around problematic content online, such as the 'Peppa Pig scandal', <u>tech companies are slowly stepping into the role of moderator</u> – one which they have long sought to avoid because of the associated responsibilities.

3

4

5

6

7
> Specifically, platforms are significantly amping up the number of moderators they employ – in YouTube's case increasing the number of people on the lookout for inappropriate content to more than 10,000. With Perspective, an API that uses machine learning to spot abuse and harassment online, Google's Jigsaw initiative is also "studying how computers can learn to understand the nuances and context of abusive language at scale" and finding ways to "help moderators sort comments more effectively".

> > (Pg. 63-64, ***Exhibit Q***)

8

9
78.     GOOGLE admits American tradition prioritizes Free Speech for effective democracy.

10
They state:

11
> 100% commit to the American tradition that prioritises free speech for democracy, not civility. By creating spaces where all values, including civility norms, are always open for debate.

12
> > (Pg. 66, ***Exhibit Q***)

13
79.     On information and belief, GOOGLE again admits it abandoned the American tradition

14
of Freedom of Speech in favor of a European view that, in GOOGLE's words, they now strive

15
to:

16
> Create well-ordered spaces for safety and civility. 100% commit to the European tradition that favors dignity over liberty, and civility over freedom By censoring racial and religious hatred, even when there's no provocation of violence.

17

18
> > (Pg. 66-85, ***Exhibit Q***)

19
### **4.5: GOOGLE's Contracts Are Unconscionable**

20
80.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

21
above in paragraphs 1 through 79.

81.    All registered users of YouTube.com are required to agree to YOUTUBE's Terms of Service. (Attached and incorporated herein at *Exhibit S*)

82.    YOUTUBE's contracts, including but not limited to, are non-negotiable and by definition makes it an adhesion contract.

83.    YOUTUBE's Terms of Service allow it, in YOUTUBE's sole discretion, to change the terms of service at any time, in any way. Registered YOUTUBE users, per the terms of service, are required to agree, in advance, to be bound to any changes YOUTUBE makes, regardless of what they may be. YOUTUBE States:

> YouTube, in its sole discretion, may modify or revise these Terms of Service, and policies at any time, and you agree to be bound by such modifications, or revisions.
>
> (Section 1(b) *Exhibit S*)

84. YOUTUBE's Terms of Service require users to agree to stipulate they will not submit any content or material contrary to YOUTUBE's Guidelines, or contrary to local, national, or international laws and regulations. However, YOUTUBE's Terms of Service never mentions what nations laws its referring to. They state:

> You further agree that you will not submit to the Service any Content or other material that is contrary to the YouTube Community Guidelines, currently found at:  https://youtube.com/t/community_guidelines,  which may be updated from time to time, or contrary to applicable local, national, and international laws or regulations.
>
> (Section 6(e) *Exhibit S*)

85.    One of YOUTUBE's competitor's MetaCafe also has a Terms & Conditions Adhesion Contract that allows it to change modify the Terms of Service at any time, without notice. They

state:

> Metacafe reserves the right to amend these Terms & Conditions at any time and without notice, and it is your responsibility to review these Terms & Conditions for any changes.

(Pg. 5, General Section: Metacafe Terms & Conditions, attached and incorporated herein as *Exhibit T*)

86.     Another YOUTUBE competitor Twitch.tv also has a Terms of Service adhesion contract that allows it to change the terms at any time without notice. They state:

> Twitch may amend any of the terms of these Terms of Service by posting the terms. Your continued use of the Twitch Services after the effective date of the revised Terms of Service constitutes your acceptance of the terms.

(Pg. 4, Section 6, Twitch.tv Terms of Service, attached and incorporated herein as *Exhibit U*)

87.     Another YOUTUBE competitor, Daily Motion also has a Terms of Use adhesion contract that allows it to change the terms at any time without notice. They state:

> DailyMotion may, in its sole discretion, modify these Terms from time to time and You agree to be bound by such modifications.

(Pg. 2, Section 2.3 Daily Motion Terms of Use, attached and incorporated herein as *Exhibit V*)

88.     When it comes to YOUTUBE and its closest competitors, PLAINTIFF LEWIS has <u>no meaningful choice as to whether or not to do business with YOUTUBE</u>, as YOUTUBE has the largest video platform in the world, and YOUTUBE's competitors, like YOUTUBE, require contracts of adhesion that allow YOUTUBE's competition to change the terms at any time, without any notice to the PLAINTIFF LEWIS.

89.     YOUTUBE's contracts, including their Terms of Service, which allows it to change its

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

terms, at its sole discretion, without notice to PLAINTIFF LEWIS, at any time, constitutes unfair

surprise.  This is especially true because YOUTUBE, at all times, advertises itself as a Free

Speech platform, but its own internal documents and the way it enforces its its content policies

demonstrate it's exactly the opposite of a Free Speech platform on behalf of multiple foreign

governments. YOUTUBE never disclosed these facts to PLAINTIFF LEWIS. PLAINTIFF

LEWIS only discovered these facts after they were leaked to the press and after YOUTUBE

wrongfully, maliciously and unlawfully retaliated and discriminated against PLAINTIFF LEWIS

for exercising his First Amendment right to Freedom of Speech, his religious affiliation, and his

national origin as a patriotic American citizen.

90.     GOOGLE never disclosed to PLAINTIFF LEWIS that it was acting as a joint enterprise

state actor of the Chinese government to create and implement a highly censored search engine,

Project Dragonfly. PLAINTIFF LEWIS only discovered these facts after they were leaked to the

press by a GOOGLE employee.

91.     On information and belief, YOUTUBE's adhesion contract, in the aforementioned areas

addressed in statements 80 to 90 mirrors GOOGLE's terms of service.

### 4.6:  47 U.S. Code § 230 is Unconstitutional

92.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

above in paragraphs 1 through 91.

93.     47 U.S. Code § 230 allows interactive computer services, including, but not limited to

GOOGLE, to knowingly and willfully censor American citizens for any material they submit to

these services, even if American citizens submit material that is constitutionally protected under

the United States Constitution.

94.     47 U.S. Code § 230 doesn't define the terms: "harassing" or "otherwise objectionable."

In fact, these terms aren't defined anywhere in 47 U.S.C. Part I, Common Carrier Regulation.

95.     In 47 U.S. Code § 230 Congress made the following findings, in pertinent part:

> (a)(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

> (a)(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

Then, 47 U.S. Code § 230 appears to be internally inconsistent at (c)(2)(A) by allowing interactive computer services, like GOOGLE, to knowingly censor American's constitutionally protected speech, free from any civil liability whatsoever under 42 U.S. Code § 1983 or 42 U.S. Code § 2000a.

96.     The United States Constitution's First Amendment states in pertinent part: "Congress shall make no law...abridging the freedom of speech..." On information and belief, 47 U.S. Code § 230 allows interactive computer services, including but not limited to, GOOGLE, to abridge freedom of speech free from civil liability.

97.     In the United States, there is no hate speech exception under U.S. law that allows an American citizen to be censored for promulgating hateful rhetoric. U.S. Courts have completely and repeatedly rejected the idea that American citizens' constitutionally protected Free Speech rights should be abridged because of hate speech.

98.     GOOGLE stipulates its hate speech policies run counter to American tradition, in the

Good Censor internal research document, as stated earlier in this complaint. GOOGLE's hate speech policies also run counter to well-settled United States law and chill online free speech.

### 4.7: YouTube.com is a Place of Public Accommodation Per 42 U.S.C. § 2000a

99.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 98.

100.     YOUTUBE's website, YouTube.com and its mobile Apps allow registered users to pay for premium video access through their subscription service YouTube Red.

101.     YOUTUBE rents and sells movies and TV shows to registered users.

102.     YOUTUBE allows registered users to view videos as well as critique and comment on videos, through their comment system and their like/dislike system.

103.     YOUTUBE allows registered users to create their own videos, films, and documentaries and YouTube hosts this content on their website.

104.     If a registered YOUTUBE user obtains over 100,000 subscribers to their YOUTUBE channel, YOUTUBE provides these users access to their video production studios to assist them in creating video content for YOUTUBE's platform.

105.     YOUTUBE allows registered users to contribute money to registered YOUTUBE video content creators directly, through a system known as "Superchats."

106.     YOUTUBE also maintains contracts with advertisers and shows those advertiser ads on videos on their platform. A portion of YOUTUBE's advertising revenue is shared with registered users who create videos hosted on YOUTUBE's website YouTube.com.

107.     If the YOUTUBE registered user's ad revenue reaches a certain threshold in the United

1   States, YOUTUBE issues the registered user an I-9 tax form for income earned.

2   108.    An American citizen must be a registered user on YOUTUBE to purchase, rent,

3   comment, rate, or subscribe to their video service YouTube Red.

4   109.    YOUTUBE's website's primary purpose is to sell, rent, and host movies, TV shows, and

5   the independently created videos of its registered users.

6   110.    YOUTUBE only operates this service on the internet and their website is accessed

7   through desktop computers, laptop computers, TVs, and mobile phones. YOUTUBE doesn't

8   maintain brick and mortar locations to view their videos, TV shows, and movies.

9   111.    YOUTUBE's address in cyberspace is YouTube.com

10   112.    On information and belief, YOUTUBE is primarily both a digital theater and a place of

11   exhibition or entertainment.

12   113.    On information and belief, YOUTUBE provides closed captioning of videos hosted on its

13   website for the hearing impaired.

14   114.    On information and belief, YOUTUBE's android mobile app works with android

15   accessibility features for access support for blind and low vision users by virtue of the talkback

16   and BrailleBack applications and other special accessibility features.

17   115.    In a letter to Congress dated September 25, 2018, The United States Department of

18   Justice Office of the Attorney General stated that the Department of Justice considers websites to

19   be places of public accommodation, when they stated in pertinent part:

20           The department first articulated its interpretation that the ADA applies to
             'public accommodations' websites over 20 years ago. This interpretation is
21           consistent with the ADA's Title III requirement that the goods, services,

privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.

(See Letter from the Office of the Assistant Attorney General to Congress, dated September 25, 2018, attached and incorporated herein as *Exhibit W*)

116.    On information and belief, YOUTUBE's and GOOGLE's terms of service and community guidelines were created, in large part, to protect users on the basis of race, color, religion, or national origin, as described by 42 U.S.C. § 1983 and 42 U.S.C. § 2000a.

**4.8:  Facts Related To GOOGLE's Adverse Actions Against PLAINTIFF**

117.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 116.

118.    LEWIS joined YOUTUBE as a registered user on or about August 13, 2016.

119.    LEWIS created a channel called, "Misandry Today" and went by the online name of DDJ.

120.    LEWIS published his first YouTube video, a commercial for his book *The Feminist Lie, It Was Never About Equality*, on or about May 29, 2017.

121.    LEWIS published a video commentary entitled, "The Social Media Constitutional Crisis" on YouTube.com on or about October 28, 2017.

(See: https://www.bitchute.com/video/BffZys8xmL4/ attached and incorporated herein by reference as *Exhibit X*)

122.    LEWIS published a video commentary entitled, "The Feminist & SJW Treason" on YouTube.com on or about November 3, 2017.

(See: https://www.bitchute.com/video/tupm1wMrJVI/, attached and incorporated herein by

*YOUTUBE/GOOGLE COMPLAINT FOR*                                    PG. 32 OF 67
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

1   reference as ***Exhibit Y***)

2   123.   LEWIS published a video commentary entitled, "The Legal Controversies Surrounding

3   Social Media Companies" on YouTube.com on or about March 20, 2018.

4   (See: https://www.bitchute.com/video/NswlbKoXrjw/, attached and incorporated herein by

5   reference as ***Exhibit Z***)

6   124.   From October 28, 2017 forward, YOUTUBE demonetized many of LEWIS' videos

7   requiring him to file an internal YOUTUBE appeal. On information and belief, YOUTUBE

8   provides only one mechanism for demonetization appeal, and that mechanism consists of

9   clicking an appeal button. On information and belief, YOUTUBE demonetization appellants,

10  including LEWIS, have no ability to submit written facts, attach files, or submit any other type of

11  information to allow YOUTUBE to conduct any good faith meaningful inquiry or make a good

12  faith informed decision about demonetization. Further, this has been exactly LEWIS' experience

13  in attempting to appeal YOUTUBE Demonetization. While LEWIS won many of these

14  demonetization appeals, at least 19 appeals were lost. Of the YOUTUBE appeals LEWIS won,

15  he was never compensated for lost revenue for YOUTUBE's wrongful demonetization of his

16  videos.

17  125.   LEWIS published a video commentary entitled, "YouTube Demonetizes Videos During

18  Upload" on YouTube.com on or about June 9, 2018. In this 13 minute video, LEWIS

19  demonstrates, with images and descriptions, that YOUTUBE demonetized the LEWIS' video

20  during the upload process, before the upload and internal processing was finished and before it

21  ever went live.  (See: https://www.bitchute.com/video/PpuNRGN_dxc/, attached and

*YOUTUBE/GOOGLE COMPLAINT FOR*                                    PG. 33 OF 67
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

incorporated herein by reference as *Exhibit AA*)

126.    On or about December 4, 2018, LEWIS published the video on YouTube.com, "Overthrowing Democracy By Any Means Necessary" Shortly after upload, YOUTUBE demonetized this video. (See: https://www.bitchute.com/video/5OJrLcz6HOg/, attached and incorporated herein by reference as *Exhibit AB*)

127.    LEWIS appealed and on December 6, 2018, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Overthrowing Democracy By Any Means Necessary" will remain. (See email from YouTube dated December 6, 2018, attached and incorporated herein as *Exhibit AC*)

128.    On or about December 7, 2018, LEWIS published the video on YouTube.com, "The SPLC Finances Terrorists." Shortly after upload, YOUTUBE demonetized this video. (See: https://www.bitchute.com/video/IsK1bxp3iIBw/, attached and incorporated herein by reference as *Exhibit AD*)

129.    LEWIS appealed and on December 10, 2018, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "The SPLC Finances Terrorists."  will remain. (See email from YouTube dated December 10, 2018, attached and incorporated herein as *Exhibit AE*)

130.    On or about December 17, 2018, LEWIS published the video on YouTube.com, "American Values Are Haram" Shortly after upload, YOUTUBE demonetized this video. (See: https://www.bitchute.com/video/nG0L5VwoPxa6/, attached and incorporated herein by reference as *Exhibit AF*)

131.    LEWIS appealed and on December 20, 2018, YOUTUBE emailed LEWIS to notify him

that the demonetization of his video, "American Values Are Haram" will remain. (See email from YouTube dated December 20, 2018, attached and incorporated herein as *Exhibit AG*)

132.    On or about December 21, 2018, LEWIS published the video on YouTube.com, "Antifa Exposed: Identification & Tactics (Part 2/5)" Shortly after upload, YOUTUBE demonetized this video. (See: https://www.bitchute.com/video/YdLRKIFvoMQK/, attached and incorporated herein by reference as *Exhibit AH*)

133.    LEWIS appealed and on December 23, 2018, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Antifa Exposed: Identification & Tactics (Part 2/5)" will remain. (See email from YouTube dated December 23, 2018, attached and incorporated herein as *Exhibit AI*)

134.    On or about December 22, 2018, LEWIS published the video on YouTube.com, "Antifa Exposed: Astroturf Activism & Infiltration of Silicon Valley, DOJ & White House (Part 3/5)" Shortly after upload, YOUTUBE demonetized this video. (See: https://www.bitchute.com/video/di65GKuNvswE/, attached and incorporated herein by reference as *Exhibit AJ*)

135.    LEWIS appealed and on December 25, 2018, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Antifa Exposed: Astroturf Activism & Infiltration of Silicon Valley, DOJ & White House (Part 3/5)" will remain. (See email from YouTube dated December 25, 2018, attached and incorporated herein as *Exhibit AK*)

136.    On or about December 28, 2018, LEWIS published the video on YouTube.com, "The Roy Moore Story Is A Symptom Of A Larger Fraud" Shortly after upload, YOUTUBE demonetized this video.

*YOUTUBE/GOOGLE COMPLAINT FOR DAMAGES, RELIEF, DECLARATORY JUDGMENT*

(See: https://www.bitchute.com/video/Ldg3jabZLQk/, attached and incorporated herein by reference as ***Exhibit AL***)

137.    While YOUTUBE never emailed LEWIS that he won the demonetization appeal on his, "The Roy Moore Story Is A Symptom Of A Larger Fraud" video, this video was re-monetized the following day, December 29, 2018.

138.    Shortly after LEWIS uploaded "The Roy Moore Story Is A Symptom Of A Larger Fraud" to YouTube.com, he noticed that his video appeared to be getting very few views compared to some of his other videos in the same type of subject matter.  Then, in the comments section of this video, LEWIS observed comments from, at least, three viewers inform him YOUTUBE never notified them of the video, "The Roy Moore Story Is A Symptom Of A Larger Fraud" or other recent uploads to his YouTube channel. (See Comments from viewers, attached and incorporated herein as ***Exhibit AM***)

139.    On or about December 28, 2018, shortly after the, "The Roy Moore Story Is A Symptom Of A Larger Fraud" video was published on YouTube.com, in response to his concerns over algorithm censorship, LEWIS published the video on YouTube.com, "Did I get Algo Censored For My Roy Moore Research?" (See: https://www.bitchute.com/video/x354fr9HJ6Q/, attached and incorporated herein by reference as ***Exhibit AN***)

140.    In the comments section of the "Did I get Algo Censored For My Roy Moore Research?" video, LEWIS noticed a comment from a viewer that stated he that YOUTUBE unsubscribed this viewer from LEWIS' YouTube channel more than once. (See Comment from Did I get Algo Censored For My Roy Moore Research?" video, attached and incorporated herein as ***Exhibit***

*AO*)

141.   On or about December 30, 2018, LEWIS published the video, <u>"Is Google An Agent Of</u> <u>The Chinese Government?"</u> to YouTube.com.

(See <u>https://www.bitchute.com/video/Pey0YCf-CxA/</u>, attached and incorporated herein by reference as *Exhibit AP*)

142.   On or about January 2, 2019, LEWIS published the video, "<u>Is Google's Empire Built On</u> <u>Fraud?</u>" to YouTube.com.

See <u>https://www.bitchute.com/video/Z_VxHvwgMVE/</u>, attached and incorporated herein by reference as *Exhibit AQ*)

143.   On May 22, 2018, LEWIS published the video, "<u>The Beginning and End of a Life</u>" to YouTube.com. This video outlines LEWIS' opposition to abortion.

(See: <u>https://www.bitchute.com/video/t9Iyc2nkRz0/</u>, attached and incorporated herein by reference as *Exhibit AR*)

144.   On or about December 16, 2018, LEWIS published the video, "<u>Google Values Aren't</u> <u>American Values</u>" to YouTube.com.

(See: <u>https://www.bitchute.com/video/cJgrqQsfEueX/</u>, attached and incorporated herein by reference as *Exhibit AS*)

145.   On or about January 7, 2019, LEWIS published the video, "<u>YouTuber Law, Antitrust, &</u> <u>Discrimination Against Americans</u>" to YouTube.com.

(See: <u>https://www.bitchute.com/video/sOlhRYWOLoc/</u>, attached and incorporated herein by reference as *Exhibit AT*)

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

146.    On or about January 15, 2019, LEWIS published the video, "The Truth Behind The Steve King Witchhunt: Targeting Trump" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/V_uQNTBwqQk/, attached and incorporated herein by reference as ***Exhibit AU***)

147.    LEWIS appealed and on January 18, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "The Truth Behind The Steve King Witchhunt: Targeting Trump" will remain. (See email from YouTube dated January 18, 2019, attached and incorporated herein as ***Exhibit AV***)

148.    On or about January 21, 2019, LEWIS published the video, "Antifa Now Targets Children" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/v-vj6WPCqr0/, attached and incorporated herein be reference as ***Exhibit AW***)

149.    LEWIS appealed and on January 24, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Antifa Now Targets Children" will remain. (See email from YouTube dated January 24, 2019, attached and incorporated herein as ***Exhibit AX***)

150.    On or about January 28, 2019, LEWIS published the video, "Necessary Medicine is A Bitter Pill To Swallow" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/gjegxRY5baU/, attached and incorporated herein by reference as ***Exhibit AY***)

151.   LEWIS appealed and on January 30, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Necessary Medicine is A Bitter Pill To Swallow" will remain. (See email from YouTube dated January 30, 2019, attached and incorporated herein as *Exhibit AZ*)

152.   On or about January 27, 2019, LEWIS published the video, "A Deep Dive Into YouTube's New Edicts & Their Far Reaching Implications" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/iY0RmTnRyF4/, attached and incorporated by reference herein as *Exhibit BA*)

153.   LEWIS appealed and on January 31, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "A Deep Dive Into YouTube's New Edicts & Their Far Reaching Implications" will remain. (See email from YouTube dated January 31, 2019, attached and incorporated herein as *Exhibit BB*)

154.   On or about February 5, 2019, LEWIS published the video, "Outrage Mob Finally Gets Held Accountable: Gavin McInness Lawsuit (1/3)" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/aYSNFSkLhhM/, attached and incorporated by reference herein as *Exhibit BC*)

155.   LEWIS appealed and on February 7, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Outrage Mob Finally Gets Held Accountable: Gavin McInness Lawsuit (1/3)" will remain. (See email from YouTube dated February 7, 2019, attached

and incorporated herein as ***Exhibit BD***)

156.    On or about February 10, 2019 LEWIS published the video, "Her Story: Elizabeth Warren – A Case Study In Integrity" to YouTube.com.

(See: https://www.bitchute.com/video/oAvoHBC1C30/, attached and incorporated by reference herein as ***Exhibit BE***)

157.    On or about February 20, 2019, LEWIS published the video, "Her Story: Why Wouldn't The Husband Pay?" to YouTube.com. Shortly after upload, YOUTUBE demonetized this video.

(See: https://www.bitchute.com/video/xkVNgSSKwoo/, attached and incorporated herein by reference as ***Exhibit BF***)

158.    LEWIS appealed and on February 23, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his video, "Her Story: Why Wouldn't The Husband Pay?" will remain.

(See email from YouTube dated February 23, 2019, attached and incorporated herein as ***Exhibit BG***)

159.    On or about January 23, 2019, LEWIS published the video "A Scorched Earth Case Study" to YouTube.com. YOUTUBE Demonetized this video.

(See: https://www.bitchute.com/video/oJhov3luEO8/, attached and incorporated herein by reference as ***Exhibit BH***)

160.    On or about March 11, 2019 LEWIS published the video "The Smollet Case: What Everyone Missed" to YouTube.com. YOUTUBE Demonetized this video.

(See: https://www.bitchute.com/video/tzcoZHTa-hY/, attached and incorporated by reference herein as ***Exhibit BI***)

161. LEWIS appealed and on March 19, 2019, YOUTUBE emailed LEWIS to notify him that the demonetization of his videos, "A Scorched Earth Case Study" and "The Smollet Case: What Everyone Missed" will remain. (See email from YouTube dated March 19, 2019, attached and incorporated herein as ***Exhibit BJ***)

161. On or about March 16, 2016 LEWIS published the video, "The NZ Shooting Smells Like A False Flag" on YouTube.com.

(See: https://www.bitchute.com/video/_PviQrUMGZw/, attached and incorporated herein by reference as ***Exhibit BK***)

162. On or about March 17, 2019, YOUTUBE emailed LEWIS and informed him that his video, "The NZ Shooting Smells Like A False Flag" was placed in restricted mode. In its email, YOUTUBE admits that this video doesn't violate YouTube's Community Guidelines, but YOUTUBE chose to restrict anyway. LEWIS appealed and won. YOUTUBE unrestricted the video.

(See March 17, 2019 email from YouTube, attached and incorporated as ***Exhibit BL***)

163. In addition to restricting the video, "The NZ Shooting Smells Like A False Flag", YOUTUBE also demonetized this video. LEWIS also appealed this decision. On or About March 17, 2019, YOUTUBE emailed LEWIS and informed him that his demonetization appeal lost. (See March 17, 2019 email from YouTube, attached and incorporated as ***Exhibit BM***)

164. On or about March 18, 2019 YOUTUBE again emailed LEWIS regarding his video, "The NZ Shooting Smells Like A False Flag", and again restricted it. LEWIS immediately appealed again and won. YOUTUBE unrestricted the video. (See March 18, 2019 email from YouTube,

1    attached and incorporated as *Exhibit BN*)

2    165.    On or about March 20, 2019 YOUTUBE again emailed LEWIS regarding his video, "The

3    NZ Shooting Smells Like A False Flag" to inform him that YOUTUBE removed this video.

4    YOUTUBE alleged it violated YouTube's Community Guidelines. LEWIS immediately appealed

5    and won. (See March 20, 2019 email from YouTube, attached and incorporated as *Exhibit BO*)

6    166.    On or about March 21, 2019, YOUTUBE again emailed LEWIS regarding his video,

7    "The NZ Shooting Smells Like A False Flag" and again removed it. YOUTUBE again alleged it

8    violated YouTube's Community Guidelines. YOUTUBE, once again, immediately appealed and

9    this time lost and YOUTUBE gave LEWIS' channel a Community Guidelines warning. (See

10   March 21, 2019 email from YouTube, attached and incorporated as *Exhibit BP*)

11   167.    On or about March 21, 2019, when YOUTUBE removed LEWIS' video, "The NZ

12   Shooting Smells Like A False Flag", YOUTUBE also demonetized LEWIS' entire YouTube

13   channel with no opportunity to appeal. It remained demonetized until YOUTUBE banned the

14   channel entirely. (See Channel Status, attached and incorporated herein as *Exhibit BQ*)

15   168.    On information and belief, YOUTUBE removed LEWIS's video, "The NZ Shooting

16   Smells Like A False Flag" is because in the video, LEWIS cited the New Zealand mass shooter's

17   manifesto in which the shooter stated "The Nation with the closest political and social values to

18   my own is the People's Republic of China." This statement, by itself, debunks much of the left

19   wing media narrative. New Zealand criminalized citing the manifesto itself or even reading it.

20   YOUTUBE censored this video on behalf of China because it paints them in a negative light and

21   demonstrates the New Zealand mass shooter was a communist leftist, not a rightwing extremist,

*YOUTUBE/GOOGLE COMPLAINT FOR*                                    PG. 42 OF 67
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

as many left leaning online sources associated with GOOGLE were falsely reporting the shooter as a right wing extremist. (See, Pg. 21, New Zealand Mass Shooter Manifesto entitled: "The Great Replacement," attached and incorporated herein as ***Exhibit BR***)

### 4.9: GOOGLE Project Veritas Leaks & Fraud

169.    On or about August 14, 2019 Project Veritas published approximately 950 pages of leaks from GOOGLE provided to them by former GOOGLE employee, Zachary Vorhies.

See: https://www.projectveritas.com/2019/08/14/google-machine-learning-fairness-whistleblower-goes-public-says-burden-lifted-off-of-my-soul/, attached and incorporated herein by reference as ***Exhibit BS***)

170.    On Information and belief, YOUTUBE maintains at least one, possibly more blacklists, internally referred to as Twiddler blacklists. (See Project Veritas Leak, YouTube Twiddler Blacklist, attached and incorporated as ***Exhibit BT***)

171.    On information and belief, according to the Project Veritas Leaks GOOGLE created and maintains at least two programming frameworks called Twiddler and Ascorer that allows GOOGLE and YOUTUBE to shadow ban or otherwise censor video and other online content. (See Project Veritas Leak, GOOGLE Superroot Twiddler Quick Start Guide, attached and incorporated as ***Exhibit BU***)

172.    On information and belief, Twiddler allows GOOGLE and YOUTUBE to boost online content. Thus, GOOGLE and YOUTUBE can unethically and falsely boost video or a website post go viral and increase its visibility and discoverability. (Pg. 4, ***Exhibit BT***)

173.    On information and belief, Twiddler allows GOOGLE and YOUTUBE to filter online

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

content. In other words, this tool allows GOOGLE and YOUTUBE to shadow ban, demote and conceal content without the need to outright remove it. This includes, but is not limited to LEWIS videos. (Pg. 4, *Exhibit BT*)

174.    On information and belief, Twiddler also allows GOOGLE and YOUTUBE to set the order of search results of websites and videos, including limiting the maximum placement a video or website can show up in a search. (Pg. 4, *Exhibit BT*)

175.    On information and belief, GOOGLE uses Twiddler to wrongfully and unethically boost and increase ad revenue of YouTube videos and Adsense enabled websites, since ad revenues are earned through Adsense and YouTube monetization are based on views.

176.    On information and belief, GOOGLE uses Twiddler to unethically and wrongfully demote and conceal YouTube videos and Adsense enabled websites to defraud Video content creators, including, but not limited to LEWIS, of ad revenue.

177.    On information and belief, GOOGLE uses Twiddler to overcharge advertisers by virtue of artificially boosting videos, wrongfully causing advertisers to pay more product placement.

178.    On information and belief, GOOGLE enables page level domain restrictions to unethically and wrongfully conceal content it doesn't like. (See Project Veritas Leak, Page Level Domain Restriction, attached and incorporated herein as *Exhibit BV*)

179.    On information and belief, GOOGLE maintains website blacklists for news sites. (See Project Veritas Leak, News Black List Site For Google, attached and incorporated herein as *Exhibit BW*)

180.    On information and belief, GOOGLE can boost website and links in real time using a

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

software framework called Realtime Boost (See Project Veritas Leak, Realtime Boost, attached and incorporated herein as *Exhibit BX*)

181.    On information and belief, GOOGLE sees itself as the arbiter of Truth. (see Project Veritas Leak, Fake News-Letter, attached and incorporated herein as *Exhibit BY*)

182.    On or about January 23, 2019 online news website Newsbusters, GOOGLE pays its employees to work with partnered non-profit groups. Southern Poverty Law Center is one of GOOGLE's non-profit partners.

(See: https://www.newsbusters.org/blogs/techwatch/corinne-weaver/2019/01/23/google-funds-anti-conservative-hate-group-southern-poverty, attached and incorporated by reference herein as *Exhibit BZ*)

183.    Southern Poverty Law Center is a YOUTUBE trusted flagger.

See: https://dailycaller.com/2018/03/01/splc-youtube-google-trusted-flaggers/, attached and incorporated herein by reference as *Exhibit CA*)

183.    According to GOOGLE, since 2016, GOOGLE has donated at least $250,000 to The Southern Poverty Law Center.

(See: https://www.google.org/our-work/inclusion/, attached and incorporated by reference as *Exhibit CB*)

184.    In his December 7, 2018 video, "The SPLC Funds Terrorists" LEWIS demonstrates the Southern Poverty Law Center funds Antifa group By Any Means Necessary (BAMN). On information and belief, BAMN and other associated Antifa groups are responsible for numerous acts of political violence against law abiding patriotic American citizens within the United States.

*YouTube/Google Complaint For*
*Damages, Relief, Declaratory Judgment*

185.    Political violence is the dictionary definition of terrorism.

186.    On information and belief, BAMN and its Antifa affiliates are terrorists funded, aided, and abetted, both directly and indirectly by GOOGLE.

187.    On information and belief, GOOGLE knowingly and willingly sponsors, pays, and trains its employees to protest against the lawfully elected President, Donald Trump and the United States government as part of the publicly well-known "RESIST" movement. (See Project Veritas Leak, Beginners Guide to Protesting, Sponsored by Resist@Google.com, Attached and incorporated herein as *Exhibit CC*)

188.    On information and belief, GOOGLE's sponsored "RESIST" group is affiliated with at least one, possibly more, Antifa Groups.

189.    On information and belief, GOOGLE sponsored and paid for an employee protest against the Trump Administration over immigration policies/laws on or about January 30, 2017. Over 2000 employees participated in the event. Sergey Brin and Sundar Pichai spoke in support of protesting Trump's Immigration policies.

(See: https://www.theverge.com/google/2017/1/30/14446466/google-immigration-protest-walkout-trump-googlers-unite, attached and incorporated herein by reference as *Exhibit CD*)

190.    On or about August 16, 2019, GOOGLE Employees circulated a petition urging GOOGLE to resist support for ICE. Over 3,000 employees signed the petition.

(See: https://www.theguardian.com/technology/2019/aug/16/hundreds-of-google-employees-urge-company-to-resist-support-for-ice, attached and incorporated by reference herein as *Exhibit CE*)

191.    YOUTUBE allows content creators to share ad revenue in return for posting video content on its website. This process is known as monetization and, on information and belief, operates as part of GOOGLE's adsense program.

See: https://support.google.com/youtube/answer/72857?hl=en, attached and incorporated herein by reference as ***Exhibit CF***)

192.    GOOGLE allows website owners to join their adsense program which allows website owners to get paid for advertisements on their websites.

(See: https://www.google.com/adsense/start/, attached and incorporated herein by reference as ***Exhibit CG***)

193.    GOOGLE also runs an adsense ad auction, which allows advertisers to bid on ad placement. On information and belief, GOOGLE conceals how different ads are valued for purposes of the auction. GOOGLE refuses to provide any legitimate transparency regarding any aspect of its ad auction process. GOOGLE, using Twiddler and other tools, can overvalue certain ads, by artificially boosting the websites/YouTube channels traffic, which can and does artificially increase/inflate marketing costs to advertisers.

## V. LEGAL CLAIMS

### FIRST CAUSE OF ACTION

**(First Amendment of the U.S. Constitution Pursuant to 42 U.S.C. § 1983)**

194.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 193.

195.    This case is a case of first impressions for the reasons set forth below.

*YouTube/Google Complaint For*
*Damages, Relief, Declaratory Judgment*

196.   In, *Matal v. Tam*, United States Supreme Court Justice Alito stated in pertinent part:

> "Speech may not be banned on the ground that it expresses ideas that offend.
>
> Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful...but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'"

197.   In *Packingham V. North Carolina*, United States Supreme Court Justice Kennedy stated in pertinent part:

> "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. The United States Supreme Court has sought to protect the right to speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential forum for the exercise of First Amendment rights. Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire. While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace--the vast democratic forums of the Internet in general, and social media in particular. Social media offers relatively unlimited, low-cost capacity for communication of all kinds, and social media users employ various websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought.
>
> The nature of a revolution in thought can be that, in its early stages, even its participants may be unaware of it. And when awareness comes, they still may be unable to know or foresee where its changes lead. The American war is over; but this is far from being the case with the American revolution. On the contrary, nothing but the first act of the great drama is closed. So too here. While we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who we want to be. The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow.

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

1
2
3
4

> This case is one of the first this Court has taken to address the relationship between the First Amendment and the modern Internet. As a result, the Court must exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium."

5
6
7
8

198.    It is well-settled in United States Courts that a required element for a successful cause of action pursuant to 42 U.S.C. § 1983 is that a defendant be a "state" actor in order to be liable. However, the statute itself doesn't define the term "state." Therefore, pursuant to the rules of statutory construction, LEWIS contends the Court adopt the plain meaning of the term of "state." Black's Law Dictionary 5th Edition defines state, in pertinent part, as follows:

9
10
11
12

> A people permanently occupying a fixed territory bound together by common-law habits and custom into one body politic exercising, through the medium of an organized government, independent the sovereignty and control over all persons and things within its boundaries, capable of making war and other peace and of entering into international relations with other communities of the globe.

13
14

> A territorial unit with a distinct general body of law. The term may refer either to a body politic of a nation or to an individual governmental unit of such a nation.

15
16
17
18

199.    Pursuant to the Black's Law Dictionary plain meaning of the term, "State", LEWIS contends that, as a matter of law, the People's Republic of China, The European Union and the signatory countries of the Christchurch Call agreement qualify as states for purposes of 42 U.S.C. § 1983.

19
20
21

200.    It's also well settled that a private company merely contracting with a state does not automatically transform that private company into a state actor.  That is not the case here. In the current case at bar, GOOGLE not only contracted with multiple foreign states, but GOOGLE

also knowingly and willfully acted in join-enterprise and their conduct is pervasively intertwined

with China by virtue of duties conferred on GOOGLE pursuant to China's 2017 National

Intelligence Law and Google's presence in China, working for the Chinese government.

201.    GOOGLE also acts in joint enterprise and is pervasively intertwined with the European

Union, The United Kingdom and other European countries. GOOGLE has appointed the United

Kingdom government and other governments' agencies (and their agents) as trusted flaggers on

GOOGLE and YOUTUBE. Further, GOOGLE and YOUTUBE assisted the European Union in

the creation of the European Code of Conduct agreement they signed with the European Union

that empowers GOOGLE and YOUTUBE to enforce European Union adopted hate speech laws

on their websites and/or platforms.

202.    GOOGLE also acts in joint enterprise and is pervasively intertwined with the signatory

governments of the Chirstchurch call agreement as well. This is because they agreed to share

their internal information with these governments and notify them when they take down online

content that violates these government's hate speech laws.

203.    GOOGLE/YOUTUBE, in their individual capacity, under color of these state's laws,

knowingly, unethically, maliciously, and in violation of well-settled United States civil rights

law, as *de facto* and/or *de jure* state actors, enforce hate speech and other censorship laws within

the United States on American citizens, including LEWIS as alleged above, by virtue of,

including but not limited to, algorithm censorship (Twiddler shadow banning), purposefully

failing to notify video subscribers of videos, purposefully unsubscribing viewers from his

YouTube channel, demonetization, restricting videos, and removing videos. These are a

violations of LEWIS constitutional rights of Free Speech.

203.    GOOGLE/YOUTUBE, in their individual capacity, as a state actor, also discriminatorily censored LEWIS because of his vocal support of American traditions, American conservative political groups, support of Americans Constitutional Right to Free Speech, opposition to abortion, and support of Christian values, violating LEWIS' Constitutional Free Speech right to affiliate with and speak in support of such causes and groups as alleged earlier in this complaint.

204.    GOOGLE/YOUTUBE's censorship is a case of public interest as a matter of public policy. Since the 2016 Presidential Election of Donald Trump, The United States government and the American people have been deeply concerned that foreign countries have interfered in United States electoral system, manipulated public opinion, and stifled political speech, which is a direct threat to American sovereignty, American culture, and the American way of life.

205.    GOOGLE/YOUTUBE, in their individual capacity, as state actors, have knowingly, willfully, and maliciously enforced foreign governments hate speech and censorship laws, not just on LEWIS, but on United States elected government officials, on news outlets, and on American citizens by the tens of millions.

206.    GOOGLE/YOUTUBE's actions were taken with malice and/or arbitrary and capricious, as part of GOOGLE/YOUTUBE's normal course of business as alleged herein.

## SECOND CAUSE OF ACTION

### (National Origin Discrimination Pursuant to 42 U.S.C. § 2000a)

207.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 206.

208.    This is a case of first impressions in the District of Colorado and is unsettled law

nationally for the reasons set forth below.

209.    This cause of action is of public policy and national public interest.

210.    LEWIS contends GOOGLE/YOUTUBE, as alleged above, is primarily an online theater

and/or a place of public exhibition or entertainment as defined by 42 U.S.C. § 2000a. They sell,

rent and/or exhibit movies, TV shows, and other videos on their website YouTube.com.

210.    The United States Department of Justice, Office of the Assistant Attorney General, in a

September 2018 letter to congress, discloses the D.O.J. has long considered websites to be places

of public accommodations for ADA purposes.

211.    YOUTUBE, de facto stipulates/admits it's a place of public accommodation for ADA

purposes, by virtue of its closed captioning and other technical accommodations it implements to

provided Americans with disabilities access to its video services.

212.    GOOGLE and YOUTUBE de facto stipulates/admits its a place of public accommodation

for purposes of civil rights, including but not limited to, on the basis of race, color, religion, and/

or national origin, by virtue of implementing community guidelines and other technical tools that

provide an inclusive environment for YouTube users who belong to any of these groups.

GOOGLE/YOUTUBE is very vocal in its marketing and other messaging in confirming the

existence of these civil rights based public accommodations.

213.    YOUTUBE discriminates against LEWIS on the basis of his national origin, by virtue of

YOUTUBE first demonetizing many of his videos, then demonetizing his entire channel,

limiting video discovery for videos he publishes to his YouTube channel, unsubscribing his

YouTube channel subscribers, restricting his videos, and removing videos because LEWIS is a

patriotic American citizen who promotes Constitutional rights of Americans, Christian beliefs,

and American laws and culture.

### THIRD CAUSE OF ACTION

### (47 U.S.C. § 230 Is Unconstitutional)

214.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

above in paragraphs 1 through 213.

215.    This cause of action is a case of first impressions.

216.    This cause of action is of public policy and national public interest.

217.    47 U.S.C. § 230 is facially unconstitutional and/or unconstitutional as applied to

PLAINTIFF LEWIS for vagueness, because the statute doesn't define any of the terms included

under § (c)(2)(A), such as: "harassing, obscene, lewd, lascivious, filthy, excessively violent,

objectionable." Normally this wouldn't merit or sustain either a facial or "as applied"

constitutional challenge. This is because pursuant to well settled rules of statutory construction,

one could use the plain meaning of these words to define them. However, § (c)(2)(A) expressly

allows providers of interactive computer services, including but not limited to GOOGLE and

YOUTUBE to define these terms any way they like when the statute states, in pertinent part:

> No provider or user of an interactive computer service shall be held liable
> on account of any action voluntarily taken in good faith to restrict access to
> or availability of material that the provider or user considers to be obscene,
> lewd, lascivious, filthy, excessively violent, harassing, or otherwise
> objectionable...

Further, providers of interactive computer services, including GOOGLE and YOUTUBE, under

§ 230, could initially adopt one definition for these terms, then at a later date, redefine these terms to mean something entirely different without incurring any civil liability. Even worse, they could redefine these terms as many times as they wanted without any threat of civil liability.

218.    47 U.S.C. § 230 is facially unconstitutional and/or unconstitutional as applied to PLAINTIFF LEWIS because it is over-broad.  The United States Constitution's First Amendment states in pertinent part: "<u>Congress shall make no law...abridging the freedom of speech.</u>" Yet, this is exactly what 47 U.S.C. § 230(c)(2)(A) does, by virtue of allowing interactive computer service providers, including GOOGLE and YOUTUBE, at will, to restrict access to or availability of interactive computer services they provide, "<u>whether or not such material is constitutionally protected.</u>" GOOGLE and YOUTUBE have knowingly, expressly, maliciously, and capriciously restricted LEWIS access YouTube.com by virtue of censoring his videos from his subscriber base, new potential viewers, and barring him from earning Ad revenue in retaliation for exercising his Constitutionally protected right to freedom of speech and freedom of association under the First Amendment of the Constitution of the United States. PLAINTIFF LEWIS isn't the only victim of GOOGLE and YOUTUBE's unconstitutional censorship pursuant 47 U.S.C. § 230. Many elected United States officials, and millions of American citizens have also been silenced and/or otherwise unconstitutionally censored by GOOGLE and YOUTUBE acting under the protection of 47 U.S.C. § 230.

219.    47 U.S.C. § 230 is facially unconstitutional and/or unconstitutional as applied to PLAINTIFF LEWIS because it is internally inconsistent. When reviewing the statute §(a) and §(b) it appears Congresses legislative intent in the creation of this statute was to increase

availability of online content and interactive media regardless of whether its political,

educational, cultural or for the pure entertainment value. Yet, §(c)(2)(A) does the exact opposite,

by allowing interactive computer services, including GOOGLE and YOUTUBE to restrict this

content, thus making the statute itself internally inconsistent pursuant to the rules of statutory

construction.

<u>**FOURTH CAUSE OF ACTION**</u>

**(Fraud)**

220.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

above in paragraphs 1 through 219.

221.    GOOGLE/YOUTUBE, at all times publicly presents itself as a free speech platform, free

from unlawful censorship.

222.    YOUTUBE/GOOGLE, in its terms of service, community guidelines, or anywhere on its

websites YouTube.com or Google.com or by any other direct means, never discloses to YouTube/

Google American citizen registered users that it employs and/or assigns foreign government

entities and/or agencies as trusted flaggers. GOOGLE/YOUTUBE actively conceals the

identities of its trusted flaggers.

223.    YOUTUBE/GOOGLE never discloses to American citizen registered users that their

Constitutionally protected right to free speech could be silenced and/or censored if a foreign

government objects to it.

224.    YOUTUBE/GOOGLE never discloses to American citizen registered users that any

monetization from ad revenue that they may be entitled to, could be suspended, restricted, or

1   ended, if a foreign government objects to it.

2   225.    YOUTUBE/GOOGLE never disclosed to American citizen registered users that it

3   abandoned its original principles of American Constitutional style free speech in favor of a more

4   censored European/Chinese ideological perspective.

5   226.    YOUTUBE/GOOGLE never disclosed to American citizen registered users that it

6   maintained blacklists of words, websites, users, and/or other material/content.

7   227.    YOUTUBE/GOOGLE never disclosed to American citizen registered users and

8   advertisers that through algorithm censorship and blacklists, such as Twiddler, Adscorer and

9   other internal tools, it artificially promoted (increasing traffic) and demoted (decreasing traffic)

10  websites, YouTube channels, and other online material. By doing this, YOUTUBE/GOOGLE

11  artificially increased ad revenue for YOUTUBE/GOOGLE and the organizations and individuals

12  promoted, while at the same time artificially decreasing ad revenue for organizations and

13  individuals demoted.

14  228.    At all times, GOOGLE/YOUTUBE was aware they were misleading American citizen

15  registered users, as described above, including but not limited to, through falsely claiming they

16  maintained no blacklists and didn't shadow ban or otherwise wrongfully censor legal content

17  from their platforms.

18  229.    GOOGLE, in their ongoing effort to conceal these and other facts proving GOOGLE's

19  malfeasance from American people, GOOGLE CEO, Sundar Pichai, knowingly, purposefully,

20  and maliciously lied to the United States Congress when forthrightly and expressly asked about

21  these issues. This is a violation of United States Federal Law.

*YOUTUBE/GOOGLE COMPLAINT FOR*
*DAMAGES, RELIEF, DECLARATORY JUDGMENT*

230.   PLAINTIFF LEWIS, as well as the American public, generally, was ignorant of the fact that GOOGLE/YOUTUBE misrepresented/concealed the facts contained in statements 1 thru

231.   At all times, GOOGLE/YOUTUBE, purposefully and with willful intent, expected their misrepresentations/omissions be acted upon, by PLAINTIFF LEWIS specifically and the American people, generally.

231.   LEWIS, because he relied on misrepresentations and/or omissions of DEFENDANTS was damaged as described in statements 1 thru 227 herein, including but not limited to, having his channel demonetized, having his videos censored in a variety of ways, and being discriminated against based on his national origin as a patriotic American citizen, his Christian beliefs, thru censoring his Constitutionally protected right to free speech and freedom to associate.

## **FIFTH CAUSE OF ACTION**

### **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

232.   PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 231.

233.   LEWIS and GOOGLE/YOUTUBE entered into written contracts in which GOOGLE/YOUTUBE agreed to provide access to GOOGLE services, YouTube access, hosting, streaming, advertising and/or ad revenue share services to LEWIS. Those contracts give GOOGLE/YOUTUBE unilateral discretion to remove, restrict, demonetize or demote (decrease traffic) LEWIS' content as they see fit. It also allow GOOGLE/YOUTUBE to change their contractual terms at any times, without notice to LEWIS, and requires LEWIS to stipulate to

1   agreeing to any changes, whatever they may be.

2   234.   Implied in those contracts is the implied covenant of good faith and fair dealing. This is

3   especially true since these contracts are, by definition, are contracts of adhesion, and provide

4   GOOGLE/YOUTUBE unilateral and unfettered discretionary control over literally every aspect

5   of their contractual relationship with LEWIS. YOUTUBE/GOOGLE have exercised this control,

6   repeatedly, and without any meaningful notice to LEWIS, and without any meaningful

7   negotiation, discussion, or credible/meaningful appeal. To the extent GOOGLE/YOUTUBE's

8   discretionary authority under these contracts is valid, they are obliged to exercise them fairly and

9   in good faith.

10   235.   LEWIS, for his part, substantially performed all significant duties required of him under

11   his written agreements with GOOGLE/YOUTUBE and/or was excused from those duties and/or

12   activities. None of LEWIS' demonetized and/or restricted videos violates the letter or spirit of

13   any term in GOOGLE/YOUTUBE's contracts with LEWIS.

14   236.   GOOGLE/YOUTUBE was bound by the implied covenant of good faith and fair dealing

15   in their agreements, terms, and other policies, not to engage in any acts, conduct, or omissions

16   that would impair or diminish LEWIS' rights and benefits of the parties' agreements, United

17   States Law, or lawful rights provided to LEWIS under the United States Constitution. Pursuant to

18   the terms of those agreements, LEWIS was to have equal and organic access to a wide audience

19   to promote his messages, and it was in reliance on GOOGLE/YOUTUBE's representations to:

20   "help you grow...discover what works best for you...give you tools, insights, and best practices

21   for using your voice and videos." This is the reason LEWIS chose YouTube as the main host of

his videos. Also, pursuant to those agreements, LEWIS was entitled to some portion of ad revenue profits that GOOGLE/YOUTUBE earned as a direct result of hosting LEWIS' content. However, GOOGLE/YOUTUBE have, by acts and omissions alleged herein, intentionally and tortiously breached the implied covenant of good faith and fair dealing by unfairly, unlawfully, and discriminatorily, interfering with LEWIS' rights to receive benefits of those contracts.

237.    GOOGLE/YOUTUBE willfully engaged in the forgoing acts and omissions with full knowledge that they were bound to act consistently with the covenant of good faith and fair dealing. Those acts and omissions were not only failures to act fairly, and in good faith, but they were acts of oppression, discrimination, fraud, and actual malice.

238.    As a direct and proximate result of the aforementioned conduct of GOOGLE/YOUTUBE, LEWIS suffered and continues to suffer, immediate and irreparable injury in fact, including lost income, reduced viewership, and damage to his brand, reputation, and goodwill, for which there exists no adequate remedy at law.

## SIXTH CAUSE OF ACTION

### (GOOGLE/YOUTUBE's Contracts Are Unconscionable)

237.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 228.

238.    GOOGLE/YOUTUBE's adhesion contracts with LEWIS are unconscionable because of unequal bargaining power as alleged earlier in this complaint. GOOGLE/YOUTUBE not only have majority market penetration in the United States, but are in fact a monopoly. Whereas, LEWIS is an individual with nowhere near the influence, net worth, or global impact of

GOOGLE.YOUTUBE.

239.    GOOGLE/YOUTUBE's adhesion contractual provision that allows them to change any of the terms at any time, at will, without notice to LEWIS, and also requires him to pre-stipulate to any of these "at will" changes without no notice or negotiation whatsoever, constitutes unfair surprise to LEWIS, which is unconscionable.

240.    The adhesion contractual term that allows GOOGLE/YOUTUBE to "at will" make changes to any and all terms of the agreement, as also been adopted by GOOGLE/YOUTUBE's main competition, thus LEWIS has no meaningful choice of whether or not to publish videos on YOUTUBE's platform, because most if not all, of their main competitors have either the same or constructively similar terms within their agreements and YOUTUBE has the most market penetration/ market power/ monopoly power of any company that offers the same or a constructively similar service.

241.    The ability to make "at will" changes provision of GOOGLE/YOUTUBE's contracts, when combined with the requirement for LEWIS to pre-stipulate to any "at will" changes DEFENDANTS make, potentially forces LEWIS to unknowningly pre-waive his legal and constitutional rights. This constitutes unfair surprise and renders any contract with the ability to make "at will" changes unconscionable, on its face.

242.    GOOGLE/YOUTUBE, as previously alleged herein, has knowingly, maliciously, and willfully, used this and other unconscionable clauses within its contracts to oppress, discriminate, and otherwise maliciously harm LEWIS by forcing him to lose income, reputation, damage to his brand, reduced viewership and other damages as alleged herein.

**SEVENTH CAUSE OF ACTION**

**(Lanham Act- 15 U.S.C. §1125 et seq.)**

243.   PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 242.

244.   GOOGLE/YOUTUBE are engaged in interstate commerce and competition through hosting, creating, advertising, and soliciting and receiving revenue for advertising, video streaming, services on the YouTube.com website. GOOGLE/YOUTUBE competes with video producers like LEWIS in the market of online video streaming/viewing by creating, hosting, and promoting their own online video content.

245.   GOOGLE/YOUTUBE engage in an ongoing pattern and practice of knowingly and willfully misleading and deceptive advertisement and unfair competition. GOOGLE/YOUTUBE, advertise themselves as a word, term, name, symbol, and device, as a forum for open and intellectually diverse expression by a variety of speakers/registered users across the globe. GOOGLE/YOUTUBE actively, unfairly, knowingly and deceptively misrepresent the nature, characteristics, and qualities of GOOGLE/YOUTUBE's services and other commerical activities as an equal, open and diverse public forum committed to American style free speech. GOOGLE/ YOUTUBE unfairly enhance their image and goodwill of their content, while degrading/demoting/restricting LEWIS and his videos by suggesting LEWIS and his speech are offensive, hateful and/or otherwise inappropriate and/or objectionable.

246.   GOOGLE/YOUTUBE's false representations and unfair competition deceived, and had a tendency to deceive, substantial segments of GOOGLE/YOUTUBE's audience, including video

producers like LEWIS, viewers, and advertisers, who rely on those misrepresentations and are wrongfully induced to traffic and/or otherwise do business with YOUTUBE, and to view/not view particular videos. As a direct and proximate consequence of GOOGLE/YOUTUBE's actions as alleged in this complaint, LEWIS has suffered and continues to suffer immediate and irreparable injury in fact, including, but not limited to, lower viewership, decreased/lost ad revenue, a potential reduction in advertisers willing to purchase advertisements that were previously shown on LEWIS's videos, diverted viewership, and damage to LEWIS' brand, reputation, and goodwill.

247.     GOOGLE/YOUTUBE's wrongful acts were taken with oppression, discriminatory intent, fraud and/or actual malice. LEWIS attempted to remedy the situation through YouTube's internal appeals process, which is the only mechanism available to LEWIS. GOOGLE/YOUTUBE repeatedly refused to uncensor his videos and restore his ad revenue and/or cease other forms of discrimination against LEWIS alleged herein. GOOGLE/YOUTUBE has yet to articulate any credible or otherwise meaningful for their differential treatment of LEWIS.

GOOGLE/YOUTUBE treats video producers like LEWIS the same as part of their normal pattern and practice in the course of their daily business activities, by virtue of their internal algorithm censorship through Twiddler and other internal tools, internal blacklists, foreign government/agency trusted flaggers, and other forms of bad faith conduct alleged herein.

## **EIGHTH CAUSE OF ACTION**

### **(GOOGLE doesn't meet the "Good Faith" Requirements of 47 U.S.C. § 230)**

248.     PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

1   above in paragraphs 1 through 247.

2   249.   If the Court determines that 47 U.S.C. § 230 is constitutional, then LEWIS contends that

3   based on the allegations included herein, GOOGLE/YOUTUBE deserves no civil immunity from

4   liability, because, as previously stated herein, DEFENDANTS have not met the "good faith"

5   requirement for immunity from civil liability as required under to 47 U.S.C. § 230.

6   **NINTH CAUSE OF ACTION**

7   **(Tortious Interference with Economic Advantage)**

8   250.   PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth

9   above in paragraphs 1 through 249.

10   251.   GOOGLE/YOUTUBE discriminates, demonetizes, and/or otherwise censors (as alleged

11   herein) LEWIS as part of an ongoing pattern and practice to silence American citizens on behalf

12   of foreign government trust flaggers and/or other agents.

13   252.   LEWIS's YouTube channel, brand, and reputation, prior to GOOGLE/YOUTUBE's

14   knowingly unlawful and unethical interference, was growing significantly.

15   253.   GOOGLE/YOUTUBE intentionally and maliciously interfered with LEWIS' business

16   interests by the conduct set forth above, specifically, without limitation, in its role as censoring

17   LEWIS on their websites and platforms, from which he has been algorithm censored and

18   demonetized.

19   254.   LEWIS has suffered. Unless enjoined by this Court, will continue to suffer financial and

20   other damage as a direct and proximate result of GOOGLE/YOUTUBE's wrongful,

21   discriminatory, and malicious conduct. LEWIS has no adequate remedy at law.

### **TENTH CAUSE OF ACTION**

#### **(Request For Declaratory Relief)**

255.    PLAINTIFF LEWIS alleges and incorporates all preceding allegations as fully set forth above in paragraphs 1 through 254.

256.    An actual controversy exists between LEWIS and GOOGLE/YOUTUBE as to whether GOOGLE/YOUTUBE's policies, procedures and their pattern and practice as applied and alleged herein violate 42 U.S.C. § 1983,  42 U.S.C. § 2000a,15 U.S.C. §1125, the constitutionality of 47 U.S.C. § 230, and (if the court determines 47 U.S.C. § 230 is constitutional) whether or not GOOGLE/YOUTUBE meet the good faith requirements for immunity from civil liability under 47 U.S.C. § 230. Further, an actual controversy exists as to whether or not GOOGLE/YOUTUBE's contracts with LEWIS are unconscionable.

257.    A public policy and national public interest controversy also exists between LEWIS and GOOGLE/YOUTUBE as to whether or not GOOGLE/YOUTUBE operates on within the United States against United States citizens as a joint enterprise pervasively intertwined agent of foreign governments.

258.    Another public policy and national public interest controversy exists between LEWIS and GOOGLE/YOUTUBE regarding "hate speech" policies. In the United States, neither Congress, nor the Courts have ever recognized "hate speech" as a valid and/or credible reason to silence and/or otherwise censor American citizens constitutionally protected right to free speech.

259.    Unless the Court issues an appropriate declaration of rights, the parties and the American people will not know whether GOOGLE/YOUTUBE's policies, procedures and normal pattern

and practice regarding the DEFENDANT's conduct comply with applicable State and Federal law, including but not limited to, United States Constitutional protections of American citizens. If the Court fails to issue an appropriate declaration of rights there will continue to be public policy and national public interest disputes and controversy surrounding GOOGLE/YOUTUBE's policies, procedures, and application of them.

## VI. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF LEWIS respectfully prays for relief and judgment as follows:

260.    For Declaratory Judgments as follows:

A) GOOGLE/YOUTUBE are joint-interest and pervasively intertwined state actors/agents of foreign governments pursuant to 42 U.S.C. § 1983 and, in their individual capacity, violated and continue to violate LEWIS' First Amendment rights to Free Speech and Freedom of Affiliation under color of foreign law.

B) GOOGLE/YOUTUBE websites Google.com and YouTube.com are places of public accommodation, as online theaters and/or places of public exhibition within the meaning of 42 U.S.C. § 2000a and that DEFENDANTS discriminated against LEWIS because of his religion and national origin as a patriotic Christian and American citizen.

C) GOOGLE/YOUTUBE's hate speech polices used to censor American citizens, on their face, are un-American and serve to chill LEWIS' free speech rights, and constitute an unconscionable contract clause as a matter of Constitutional law, public policy, and national public interest.

D) GOOGLE/YOUTUBE's contractual clause allowing them to alter the terms of their contracts "at will" without notification and forcing to LEWIS to pre-stipulate to any and all of GOOGLE/YOUTUBE's contractual alterations constitutes an unconscionable contract clause and are unenforceable as a matter of law and public policy interest.

E) 47 U.S.C. § 230, facially and/or "as applied" to LEWIS is unconstitutional due to being over-broad, vague, and/or internally inconsistent.

F) In the alternative,  GOOGLE/YOUTUBE doesn't meet the "good faith" requirement for immunity to civil liability pursuant to 47 U.S.C. § 230.

G) GOOGLE/YOUTUBE committed Fraud by misrepresenting to LEWIS and the American people that they don't maintain blacklists or artificially promote/demote content of users.

H) Any other judgments the Court deems appropriate, based on the facts alleged herein.

261. For an injunction requiring GOOGLE/YOUTUBE to:

A) cease and desist from capriciously restricting, demonetizing, or otherwise censoring of any videos or other content of LEWIS and American Citizens on either YouTube.com or any other website created, administered or run by DEFENDANTS.

B) Cease and desist enforcement of "Hate Speech" policies against LEWIS or any other American citizen.

C) Publicly disclose which foreign governments or agencies (including their agents, public and private) work with DEFENDANTS as trusted flaggers or in any other capacity.

D) Cease and desist artificially promoting and demoting videos and/or any other content on its platforms.

262.   For actual, compensatory, special, and statutory damages in an amount to be proven at trial.

263   For punitive damages no less than $5 billion dollars.

264.   For restitution of financial losses or harm caused by DEFENDANTS conduct and in an amount to be proven at trial.

265.   Attorneys fees and costs of suit.

266.   For prejudgment and post-judgment interests.

267.   For any and all other additional relief the Court deems appropriate, just, and proper.

## **JURY DEMAND**

PLAINTIFF demands trial by jury on all issues of law or fact so triable

DATED: August 22, 2019

Respectfully Submitted

Andrew Martin Esq.

By: _____/s/ Andrew Martin_____
Andrew Martin
Attorney for Plaintiff, Bob Lewis